# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

FILED

*per Order*

DEC 3 0 2009

CLERK, US DISTRICT COURT
NORFOLK, VA

Joshua Barrett Shapiro,
2013A East Orangethorpe Ave
Placentia, CA 92870
714.223.0100

CASE NO. _2:09cv605_

     Plaintiff,

v.

Regent University
President, M.G. Robertson, Board of Trustees, et al.
1000 Regent University Drive
Virginia Beach, VA 23464
Tel: 757.352.4127
       and
Registered Agent: Attorney, Louis Isakoff
977 Centerville Turnpike
SHB 202
Virginia Beach, Virginia 23463

     Defendant.

## Complaint

### PRELIMINARY STATEMENT

1. Proceeding *pro se,* Joshua B. Shapiro, a physical and learning-disabled, former community member at the Regent University, brings this action against the University, President M.G. Robertson, and its Board of Trustees (collectively, "Regent University"). Plaintiff asserts causes of action arising from the School's treatment toward Plaintiff in

connection with its provision of public accommodations and services

for Plaintiff's disability and the School's trespass warning issued by

campus police alleging false accusations against Plaintiff for

unsubstantiated reasons.  Plaintiff maintains that the School

discriminated and retaliated against him in violation of the Americans

with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, 42

U.S.C. § 12182(a), 42 U.S.C. § 12181(7)(J), 42 U.S.C. § 12102(1)

and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §

701 *et seq.*  Plaintiff also asserts that the School violated 42 U.S.C. §

1983, false imprisonment and defamed him.  Plaintiff's basis of

complaint is a disability discrimination complaint.  Plaintiff intends to

prove that Regent University a private University violated Plaintiff's

Civil Rights and Title III of the ADA guarantees that "[n]o individual

shall be discriminated against on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public

accommodation," 42 U.S.C. § 12182(a), which includes all

"postgraduate private schools, or other places of education," 42

U.S.C. § 12181(7)(J).  Before January 1, 2009, the ADA defined a

disability as: "(A) A physical or mental impairment that substantially

limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1) (2006). Along with the Rehabilitation Act of 1973, 29 U.S.C.S. § 701 et seq.

## JURISIDICTION AND VENUE

2. This Court's jurisdiction is invoked pursuant to 42 U.S.C. § 12182, (Prohibition of discrimination by public accommodations), 42 U.S.C. § 12181(7)(J), (Equal opportunity for individuals with disabilities public accommodations and services operated by private entities), 42 U.S.C. § 12102(1) and 42 U.S.C. § 12101, the Rehabilitation Act of 1973, 29 U.S.C.S. § 701, (federal question jurisdiction) and 42 U.S.C. 1983 (deprivation of Constitution and civil rights). In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question, and 28 U.S.C. 1343(4), which provides that federal district courts have original jurisdiction over all damage actions for violations of an individual's civil rights. The substantive claims herein arise under 42 U.S.C. § 12101. Venue is proper in this District because it is the location of Regent University is in Virginia Beach, Virginia, and is the situs of the acts complained of herein.

## PARTIES

3. Plaintiff, asserts the nature of his disability consists of ADHD, Bipolar, Narcissistic personality, and physical disability constitutes a disability within the meaning of the ADA.  A cognitive function may constitute a "major life activity" that satisfies the disability standard. See Taylor v. Phoenixville, 184 F.3d 296, 307 (3d Cir. 1999) (holding "thinking" to be a major life activity); Gagliardo v. Connaught Labs., 311 F.3d 565, 569 (3d Cir. 2002) (holding "concentrating" and "remembering" to be major life activities); see also 34 C.F.R. 104.3 (j) (defining learning as a major life activity).  At the same time, limits on a person's ability to think, remember, or learn must still rise to the "substantially limiting" threshold to qualify a person as disabled. Plaintiff is a community member that utilizes the public services and accommodations at Regent University Library for research purposes as a community person.  Plaintiff asserts a substantial disability exists and can be established and reviewed by the Court through a comprehensive evaluation certified by the Committee of Bar Examiners of the Sate of California attached hereto marked Exhibit "A."

4. Defendant, is a private University overseen by their founder and

President, M.G. Robertson and board of trustees which provides public services and accommodations to students and the general public.

## STATEMENT OF FACTS

5. On **Tuesday, December 01, 2009** Plaintiff was at Regent University using the computer lab at the library for the purposes of doing research. Plaintiff was approached by campus police demanding information of identification. Several uniformed campus police and two individuals who appeared without uniform were present when such demands were made. Plaintiff asked and insisted that the campus police explain what was going on. Campus police refused to respond except with further demands to see identification. Plaintiff's identification was in his vehicle and was forced to have to go outside and procure his drivers license. Pursuant to, providing a driver's license the plaintiff was further detained, accosted, and instructed multiple times to keep his hands on his vehicle while campus police officer, David Jenkins began looking for outstanding warrants on his cell phone. When the Plaintiff questioned the reason for detainment the campus police refused to provide or state any reason. A pat down for weapons was conducted, though no weapons

were found.  Plaintiff placed his hands in his pockets and the campus

police were aggressive in their dialogue to prevent Plaintiff from

having his hands in his pockets.  (stated emphasis)  Officer Moreno

harassed and threatened Plaintiff by stating Plaintiff was 'a known

criminal in Virginia Beach and knows the type of person [he] is.'

Officer Moreno remained hostile toward the Plaintiff demanding for

his hands to remain on Plaintiff's vehicle and that Plaintiff could have

weapons on him and cannot put his hands in his pockets.'

Notwithstanding that a pat down had already commenced.  Officer

Moreno then handcuffed the Plaintiff.  Plaintiff has never come in

contact with any of these campus police officers before or

experienced such a level of ruthless interrogation.  Plaintiff remained

clueless to further understand as to why these accusations that were

made.

6.  The only indication of any complaint that was made from the

campus police was regarding a 'girl.'  Plaintiff remained at a loss to

comprehend or acknowledge what the complaint was regarding or

who had complained.

7.  Moreover, campus police observed a handicap placard attached

to the Plaintiff's rear view mirror on his vehicle which was run by

campus police and identified as the Plaintiff's.  Despite the Plaintiff

experiencing acute anxiety and muscle tremors the campus police

began giving the Plaintiff ultimatums and trouble as to the extent of

Plaintiff's disability.

8.  Plaintiff was threatened that if he came back onto the property it

would result in an arrest for trespassing and other charges.  Plaintiff

submits, a copy of a trespass warning given to the Plaintiff attached

hereto, marked Exhibit "B."  Moreover, Sergeant Christopher Tennant

stated, "The possibility that this situation may be frivolous could be

reconsidered after 3 months where the campus police could consider

allowing the Plaintiff back of the premises, though the trespass

warning would still stand."  Sergeant Tennant stated, "this occurrence

could injure any pending actions against you and you do not want a

pending action to occur." (stated emphasis)  As to what the Plaintiff

had done or to whom was extremely vague and ambiguous.  The

entire interrogation took well over an hour which commenced from

inside the library and persisted outside to the library parking lot.

Contemporaneous of the campus police investigation Plaintiff was

unable to recover personal property until the conclusion of their

investigation which remained inside the library while the investigation was ongoing.

9. The year prior the Plaintiff recalls one other instance in which a library staff member, 'Ryan' had attempt to deny access into the Regent University library for unsubstantiated reasons. The matter appeared resolved by the libraries Circulation supervisor for the University Library, Elizabeth Keen. Plaintiff discussed with Ms. Keen accommodations and services that the Plaintiff should be entitled because of his disability. Ms. Keen provided additional space which could be accommodated for the Plaintiff to occupy as well as other services that disabled students were entitled to.

## ARGUMENT

## SUBSTANTIAL LIMITATION

10. Plaintiff contends that his ADHD, Bipolar, Narcissism personality, and physical disability constitutes a disability within the meaning of the ADA. Accordingly, plaintiff intends to demonstrate "(1) that he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial." _Heiko v. Colombo Sav. Bank, 434 F.3d 249, 254 (4th Cir. 2006)_. Plaintiff claims he has ADHD, a mental impairment, which

limits the major life activity of "learning/test taking."  Plaintiff relies upon the life activity of learning, a major life activity under the ADA, to demonstrate impairment.  *See* 29 C.F.R. § 1630.2(i) (defining major life activities to include learning).

11.  While learning is a major life activity, test-taking is not.  *See Sigh v. George Washington Univ. Sch. Of Med. & Health Scis.,* 508 F.3d 1097, 1104, 378 U.S. App. D.C. 400 (D.C. Cir. 2007).  However, Plaintiff's test-taking difficulties may still play a role in the individualized assessment of whether his limitation in the major life activity of learning is substantial as required by *Toyota Motor Mfg., KY, Inc. v. Williams,* 224 F.3d 840 (6th Cir. 2002). *Id.*

12.  Furthermore, Plaintiff demonstrates that there is a genuine issue of material fact that Regent University's reason for dismissing him was a pretext for discrimination because he has presented evidence establishing a link between the improper conduct and his learning impairment.  Plaintiff's "proof" of a trespass warning indicates the school had some issue with him.  Yet, Plaintiff has demonstrated that Campus Police's vague choice of words do not mean anything other than what they logically appear to -- that Regent's breach of ethics at the School and previous issue led to the dismissal.  Thus, Plaintiff

establishes a prima facie case of discrimination. Plaintiff's disability has established a legitimate, discriminatory reason.

13. Even viewing the facts in the light most favorable to the plaintiff, this Court must find that Plaintiff has presented sufficient evidence for a reasonable person to conclude that Plaintiff has a disability and that Regent Universities reason for dismissing him was a pretext for discrimination.

## ADA & REHABILIATION ACT CLAIMS

14. Plaintiff also asserts claims of discrimination and retaliation under the ADA and the Rehabilitation Act. Because "[c]laims and defenses under the two statutes are virtually identical," the court's analysis of Plaintiff's causes of action based on these statutes is the same. *Harrison v. Rubin*, 335 U.S. App. D.C. 413, 174 F.3d 249, 253 (D.C. Cir. 1999); *Long v. Howard Univ.*, 439 F. Supp. 2d 68, 74 (D.D.C. 2006).

15. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation," 42 U.S.C. § 12182(a), which includes "all postgraduate private school, or other

place of education." 42 U.S.C. § 12181(7)(J). Discrimination on the

basis of disability includes the failure to provide reasonable

modifications "when such modifications are necessary to afford such

goods, services, facilities, privileges, advantages, or accommodations

to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). See

Bercovitch v. Baldwin School, 133 F.3d 141, 153 (1st Cir. 1998).

ADHD can constitute a disability under the ADA. Bercovitch, 133 F.3d

at 155.

16. Section 504 of the Rehabilitation Act provides that "[n]o

otherwise qualified individual with a disability... shall, soley by reason

of his or her disability, be excluded from the participation in, be

denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance," such as "a

college, university, or other post secondary institution." 29 U.S.C. §§

794(a), (b)(2)(A). However it appears that individuals may be held

liable under 42 U.S.C.S. § 1983 for infringements of rights under §

504 of the Rehabilitation Act.

## DISCRIMINATION

17. Plaintiff maintains that the School unlawfully discriminated

against him in two respects. First, Plaintiff argues that the School

failed to provide him with reasonable accommodations and services for his learning disability with knowledge that Plaintiff was in fact disabled. Second, he maintains that his trespass warning from the School was related to and a result of the School's failure to provide the accommodations and services to which he was entitled. With respect to Plaintiff's claim that he was removed because of his disability, the School does not substantiate a legitimate reason.

18. The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). In Plaintiff's Complaint, he asserts that prior to the most recent incident library staff member engaged in discrimination against Plaintiff to be allowed to use the library computer lab. Library staff member contacted campus police in retaliation. Plaintiff goes on to state that "[w]hile on its face the accusation of discrimination appear as an exercise of academic discretion, the motive to craft such offenses out of the circumstances was ill-will and discriminatory." Plaintiff further asserts that the librarians actions resulted in Plaintiff not allowed the opportunity to complete his degree or pursue a career or employment in the legal

field.

19. Plaintiff has given the School fair notice of his retaliation claim and the grounds upon which it rests. *See Kingman Park Civic Ass'n v. Williams, 358 U.S. App. D.C. 295, 348 F.3d 1033, 1040 (D.C. Cir. 2003).*

20. A request for a reasonable accommodation can be protected activity for the purposes of a retaliation claim under either § 504 of the Rehabilitation Act, 29 U.S.C.S. § 794, or the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq.

21. Individual actors can be liable for retaliation under § 504 of the Rehabilitation Act, 29 U.S.C.S. § 794. Title 34 C.F.R. § 100.7 provides that no recipient "or other person" may engage in retaliatory activity.

22. The elements of a cause of action for retaliation under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.  These are the identical elements for liability under

the anti-retaliation provision of § 504 of the Rehabilitation Act, 29 U.S.C.S. § 794.

23. In addition to claiming that Regent Universities termination violated the anti-discrimination prohibitions of § 504 and relevant regulations, Plaintiffs claim that Defendants violated the anti-retaliation regulations under § 504. Plaintiff invokes 34 C.F.R. § 100.7, which provides, No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. 34 C.F.R. § 100.7.

24. Plaintiff experienced mental pain and anguish and embarrassment as a result of the Universities intentions.

## VIOLATION 42 U.S.C. § 1983

25. Plaintiffs' may bring § 1983 claims against him for violations of their right against retaliation under the ADA. Section 1983 is "presumptively available remedy for claimed violations of federal law." *Livadas v. Bradshaw*, 512 U.S. 107, 133, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994). Plaintiff's complaint asserting a claim based upon

alleged violations of 42 U.S.C. § 1983 is the Plaintiff was not afforded

due process of law when he was accused of violating the School's

Code.  A community member or student facing suspension from

school for disciplinary reasons is entitled to "oral or written notice of

the charges against him and, if he denies them, an explanation of the

evidence the authorities have and an opportunity to present his side

of the story." *Board of Curators of Univ. of Missouri v. Horowitz,* 435

U.S. 78, 85, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) (quoting *Goss v.

Lopez,* 419 U.S. 565, 581, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975)).

26.  Plaintiff's complaint indicates that he was never afforded notice

of the charges against him, or received copies of all the evidence

considered, and instead the school took advantage of the opportunity

to present his side of the story.

27.  The broad range of relief available under 42 U.S.C.S. § 1983 for

violations of the Individuals with Disabilities Education Act is not

limited to services that might have originally been within the scope of

a free and appropriate public education.

28.  Campus Police treated Plaintiff unfairly and differently from other

students and community members, publicly humiliated plaintiff and

imposed conditions on his behavior that were impossible for him to

meet in light of his disabilities.  The Plaintiff's claim these failures
violated the ADA.

29.  Title III of the ADA states, "no individual shall be discriminated
against on the basis of disability in the full and equal enjoyment of the
goods, services, facilities, privileges, advantages, or accommodations
of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation."
42 U.S.C. § 12182.  Private schools are public accommodations
under Title III of the ADA. 42 U.S.C. § 12181(7)(J).

## FALSE IMPRISONMENT

30.  In Virginia, a false imprisonment is "'the direct restraint by one
person of the physical liberty of another without adequate legal
justification.'" *Figg v. Schroeder*, 312 F.3d 625, 637 (4th Cir. 2002)
(quoting *Jordan v. Shands*, 255 Va. 492, 500 S.E.2d 215, 218 (Va.
1998)).  In examining each constituent part of the officers' conduct,
Plaintiff asserts we do not lose sight of the possible inference from
the evidence that Campus Police were motivated by the officers'
anger at Plaintiff's "irreverent" refusal to consent to their search.  In
short, crediting Plaintiff's version of disputed factual issues, as we
must, it appears that this may not be a case in which police officers

acting in good faith made a "bad guess" in a confusing area of the

law, but instead, may be a case in which police officers, angered by a

students statement of his legal rights and refusal to permit a search

which was clearly illegal absent his consent, conducted an illegal

search in a fit of pique.  The officers now seek to justify their conduct

with an implausible to approach the plaintiff to speak to without a

warrant, assertions that verbal objection to an illegal search is an

independently arrestable offense.  The police do not have a right to

seize a citizens wallet and identification for refusing to consent to an

illegal search.  In this case, viewing the facts surrounding the false

imprisonment  claim in the light most favorable to the plaintiff, the

plaintiff was unquestionably "seized," as he was confined in the

library and parking lot for several hours while his vehicle was being

searched and harassed regarding his criminal background.

Notwithstanding the reasonableness of the plaintiff's detention during

the search, however, there remains an issue of whether the manner

of their detention -- specifically, the handcuffing -- was unreasonable.

See *Mena*, 544 U.S. at 99 (explaining that applying handcuffs

constitutes "separate intrusion").  In order for a handcuffing such as

this to be reasonable, "the governmental interests" being invoked

must have "outweigh[ed] the marginal intrusion" on the plaintiff. _Id._ at 99-100. Campus Police's failure to provide _Miranda_ warnings and the attempted elicitation from the plaintiffs of an involuntary confession and the gravamen of plaintiff's complaint is the contention that the detention, interrogation, and subsequent investigation of them by Campus Police was discriminatorily motivated and not based upon probable cause. These allegations constitute a cause of action under 42 U.S.C. 1983. The Plaintiff's allegation along this line is that during their detention by Campus Police they were "denied access to counsel." The detention and search was unlawful and unreasonable. Put simply, the Campus Polices' decision to initially handcuff the plaintiff upon entry into the Plaintiff's vehicle was unreasonable. Although they were searching for identification only -- and not for either weapons or persons -- a reasonable officer would not have had legitimate safety concerns under these circumstances. The officers were clearly not executing an issued search warrant either.

## DEFAMATION

31. Plaintiff's complaint avers that the School defamed him by placing and maintaining a false and defamatory misconduct

instances, and infiltrating police records with directions to share this information with other institutions and local authorities.

32. Plaintiff alleges that Campus Police defamed him when shared information about Plaintiff's misconduct violation with representatives, staff, and students of Regent University. According to Plaintiff, Campus Police communicated with a representative of Regent University before the school reached its decision. Therefore, the conversation and publication of the allegedly defamatory remarks occurred on **December 01, 2009.**

33. Plaintiff also states that Campus Police made their defamatory remarks when "the Campus Police were not in receipt of or had they reviewed plaintiff's Response to the allegations."

## RELIEF

34. Plaintiff seeks declaratory and injunctive relief. Moreover, Plaintiff seeks monetary relief as well.

35. To resolve this matter it is necessary that an agreement shall be put in motion that requires the University's administration to act in implementing a new practice in their training of hiring and rehiring of employees. Background checks, reference checks, qualified individuals who shall train both new hires and supervisors on all

policy and procedures. Alcohol and drug random testing shall be enforced to eliminate employees coming to the work environment impaired. This means the recruitment practices shall display progress to the court and yield results to prove that effective measures are being taken to ensure safety. All expenses of the improvements shall be paid by the University.

36. New policy and procedures shall be enforced to ensure no discrimination shall occur for individuals to be denied services, goods, facilities, and programs for frivolous reasons. The University shall abide by all guidelines of title III of ADA and the disability discrimination act, Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, refrain from further acts of discrimination and civil rights violations.

Reporting:

37. The University shall acknowledge to the court the progress and results from what the agreement states along with a certification that the accuracy and completeness of this process be known at the expense of the University.

Monitoring:

38. Every six months a review of the agreement is routinely spot

checked. This shall ensure that the agreement is being honored.

Additionally, a new grievance procedure/compliant form shall be

made easily accessible for individuals to file internal complaints

through the University that require the University to communicate with

the court as to how these matters are being evaluated and

considered. The delegation of authority shall require the University to

have qualified personnel available for the public to contact or witness

any and all situations.

39. Moreover, the enforcement of cameras to monitor both the staff

and the parking area shall be in enforced. Information shall be

updated regarding its resources to enhance safety and awareness

including pamphlets with activity programs. This encompasses both

day and evening events to ensure the safety and welfare of the

community. All information as to the policies and procedures shall be

clearly visible for all individuals in the University including signs in the

library and around the campus.

Compensation:

40. The University shall pay $200,000.00 to require all the necessary

changes to their facility as mentioned as well as to the court to aid in

monitoring the progress and results of the agreement. Another

$250,000.00 shall be paid to compensate Plaintiff for discriminating, defaming, and violating Plaintiff's civil rights against him.

DATED this 10th day of December, 2009.

Respectfully Submitted

JOSHUA B. SHAPIRO

By_____

Plaintiff