**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**



Joshua Barrett Shapiro,

                                                  CASE NO.  2:09cv605

                              Plaintiff,

v.

Regent University, et al

                              Defendants.

## PLAINTIFF'S RESPONSE TO MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I. PRELIMINARY STATEMENT

The plaintiff contends that: "Regent University is a nonstock corporation, and it can act only through its agents, including its president and its lawyers."  Therefore, privity does exist between the defendants' through their scope of employment.

Because Regent University is a private university, however, and not a state university the privity standard the defendants support is inapplicable to this action.  Privity clearly exists for the officials and the Regent University, both of whom were named defendants in Joshua Barrett Shapiro v. Regent University, et al.  The operative complaints in the pending action also name the present president and

1

fellow board of trustees, and the registered agent of the Regent University as defendants in their official capacity only.   This demonstrates that the plaintiff intended to sue them for the actions they took while they were acting within the scope of their duties as officials and fellows of Regent University.

As a result, the relationship between those defendants, who are individual members of the Regent University, and the Regent University itself, which was a named defendant in the case, is sufficiently close so as for privity to exist.  See *Kutzik v. Young, 730 F.2d 149, 152 (4th Cir. 1984).*

## II. STANARD FOR REVIEW

A Rule 12(b)(6) **motion to dismiss** tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969) (citation omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citation omitted).

Moreover, the court is not bound to accept the legal conclusions of the non-moving party. The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.

The pleadings of pro se parties are to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Nonetheless, although a court will read a pro se plaintiff's complaint liberally, a pro se complaint, no less than any other complaint, must present a claim on which the court can grant relief.

### III. ARGUMENT

Plaintiff intends to respond to defendants' position which maintains the plaintiff's 'known criminal history' supports that the

3

campus polices' conduct predisposed them to act 'understandably cautious' to consider that the plaintiff 'had weapons or he may do something' is factually unsupportable for several reasons.

First, the plaintiff and defendant agree that it is undisputed that the campus police were unaware of the true identity of the plaintiff until they reached the parking lot and obtained his ID.  The defendants assume the plaintiff at the time of the incident was a threat based upon no supporting evidence, no identity of the plaintiff, or any clear understanding of why the plaintiff was approached to begin with.

The plaintiff never had any history with the University or campus police to suggest any 'known criminal past.'  The defendants' contention that the plaintiff while present in the Regent University Campus Library performing research had a reputation as a 'known criminal' is false.  Clearly, the defendants' stated they were unaware of the true identity of the plaintiff and demanded that he produce his identification.

Next, the defendants' assert that this situation is based on the plaintiff harassing a Regent student which Regent Officials were aware of.  The defendants' have failed to establish any alleged

4

harassing conduct committed with any degree of specificity. For Regent Officials to claim they had knowledge of such an incident is false on the premise that there was no victim or description of any actual event which occurred.

For the court to assume the plaintiff was harassing anybody is extraordinarily vague and unlikely. Moreover, during the incident the plaintiff had been asking the campus police 'why they needed his ID?' 'What it is that is wrong here?' Any attempt by the plaintiff to receive an adequate response from the campus police was met with confrontation and frustration. (See Amended Complaint ¶¶ 4) Aside from the comments regarding that his disability affected him while being present at the Regent University Campus Library which the University had both past and present knowledge of his disability would eliminate any consideration that he was a 'known criminal' or was 'harassing anybody.'

There was no description of any article on the plaintiff's clothing or behavior which would have caused the campus police to reasonably assume or inference that a weapon was present. A pat down did not commence until they reached the plaintiff's vehicle. For the campus police not to consider the safety of the students or the

University at the time the plaintiff was in the University Library proves insufficient suspicion that the plaintiff had a weapon.

It is undisputed that the plaintiff was at the Regent University Campus Library for one purpose on **December 01, 2009** which was to perform independent research.

The plaintiff asserts that on **December 01, 2009**, the campus police stated to him, 'we do not have to tell you anything!' (*See* Amended Complaint ¶¶ 1) The experience created fear and apprehension in the plaintiff by the campus police demanding 'ID' to what appears at first to discover the identity of the plaintiff in manner consistent as unprofessional as a campus police officer.

Incorporated in the plaintiff's amended complaint ¶¶ 4&5 states, 'unless the Plaintiff did as instructed the Campus Police became 'angry' and 'frustrated.' Plaintiff asserts he had never before this instance been confronted or crossed paths with any of the campus police or University staff regarding such an occurrence.

Campus police followed and required plaintiff to go outside to retrieve his identification from his vehicle.'

From these statements there is nothing to indicate the plaintiff '*voluntarily*' left Regent University campus library to produce his

6

identification. The plaintiff left *'grudgingly'* with the knowledge that his property and valuables were in a location in the library which were being withheld for close to two hours. Campus police refused at the time to even allow the plaintiff to collect his belongings before they went to the parking lot.

In fact, the plaintiff never mentions in any of his pleadings any discussion of or words indicating how he *'voluntarily'* agreed with the campus police.

Plaintiff pled in his amended complaint that the campus police stated his disability interfered with him listening to them and why the plaintiff was being detained, restrained, and banned from the Regent University campus. The trespassing notice issued to the plaintiff reflected that his presence was never to be allowed back because his disability interfered with him on the campus. In fact, the plaintiff was heckled both inside the campus library and in the parking lot as to his behavior having a casual nexus between his disability and him being removed. Plaintiff does argue that there was a prior occasion which he spoke to the campus library regarding his disability and requesting accommodations. It is clear that the University had knowledge that the plaintiff was disabled. (*See* amended complaint ¶¶ 6-13)

## IV. PLAINTIFF ARGUES HE IS 'DISABLED' UNDER ADA AND THE DEFENDANT IS LIABLE FOR UNDER ADA BASED ON DISABILITY DISCRIMINATION

Plaintiff, asserts the nature of his disability consists of ADHD, Bipolar, Narcissistic personality, and a physical disability which constitutes a disability within the meaning of the ADA.  A cognitive function may constitute a "major life activity" that satisfies the disability standard.  See Taylor v. Phoenixville, 184 F.3d 296, 307 (3d Cir. 1999) (holding "thinking" to be a major life activity); Gagliardo v. Connaught Labs., 311 F.3d 565, 569 (3d Cir. 2002) (holding "concentrating" and "remembering" to be major life activities); see also 34 C.F.R. 104.3 (j) (defining learning as a major life activity).  At the same time, limits on a person's ability to think, remember, or learn must still rise to the "substantially limiting" threshold to qualify a person as disabled.

The plaintiff's mental and physical disability was supported and pled in his complaint ¶¶ 3 and in an objective report marked, exhibit "A."  In addition, plaintiff stated in his amended complaint ¶¶ 1 he had both a mental and physical disability which conformed with the order signed on **December 29, 2009**, by United States District Judge

8

Raymond A. Jackson which indicates the amended complaint did not 'require legal citations, legal arguments, or submissions of proof at this point.' Instead, the purpose was to allow the plaintiff as a pro se party to particularize his claims and provide a clear description of the facts. Plaintiff asserts he complied with the order.

Defendant argues it is difficult to discern the claims which the plaintiff is arguing. The defendants state, that that the claims involve a 'violation of Title III, of the American with Disabilities Act, defamation, false imprisonment, and deprivation of civil rights, § 1983 claim.

Next, plaintiff argues, the reason he was removed from Regent University library and forbidden from returning to the University or entering the property owned or managed by Regent University is based solely upon the plaintiff being disabled.

When Campus police ran his 'handicap placard' to verify ownership they acknowledged the plaintiff did have a physical disability.

Moreover, explained more fully in the accompanying amended complaint and complaint where it clearly indicates as discussed above his mental and physical disability was an issue which led to

him being removed.  There was never any mention any specific instances that day or the day of or on any other occasions where the plaintiff was a threat to anybody or the safety of the Regent University campus.  Any response by the campus police was vague or ambiguous to determine that the purpose of the campus police to infringe of the plaintiff's personal space and ban him was related to harassing anybody.

Plaintiff contends that his ADHD, Bipolar, Narcissism personality, and physical disability constitutes a disability within the meaning of the ADA.  Accordingly, plaintiff intends to demonstrate "(1) that he has a physical and mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial." _Heiko v. Colombo Sav. Bank_, 434 F.3d 249, 254 (4th Cir. 2006).  Plaintiff claims he has ADHD, a mental impairment, which limits the major life activity of "learning/test taking."  Plaintiff relies upon the life activity of learning, a major life activity under the ADA, to demonstrate impairment.   _See_ 29 C.F.R. § 1630.2(i) (defining major life activities to include learning).

While learning is a major life activity, test-taking is not.  _See_ _Sigh v. George Washington Univ. Sch. Of Med. & Health Scis._, 508

F.3d 1097, 1104, 378 U.S. App. D.C. 400 (D.C. Cir. 2007). However, Plaintiff's test-taking difficulties may still play a role in the individualized assessment of whether his limitation in the major life activity of learning is substantial as required by *Toyota Motor Mfg., KY, Inc. v. Williams*, 224 F.3d 840 (6th Cir. 2002). *Id.*

Furthermore, the plaintiff has demonstrated that a casual nexus does exist between the plaintiff and Regent University as it relates to his disability and being discriminated because of it. The reason for dismissing the plaintiff because of his disability clearly evidences a claim for discrimination. Based on presented evidence establishing a link between the improper conduct and his learning impairment can only lead to one conclusion. Plaintiff's "proof" of a trespass warning indicates the school had dismissed him because they did not want somebody on their campus who was disabled.

Yet, the plaintiff has demonstrated that defendants' vague choice of words do not mean anything other than what they logically appear to -- that Regent's breach of ethics and discriminatory conduct based on the plaintiff being disabled at the School led to the dismissal. Thus, Plaintiff establishes a prima facie case of Title III, under the American with Disabilities Act for discrimination. Plaintiff's

disability has established a legitimate, discriminatory reason.

Even viewing the facts in the light most favorable to the plaintiff, this Court must find that plaintiff has presented sufficient evidence for a reasonable person to conclude that the plaintiff has a disability and that Regent Universities reason for dismissing him was because he was disabled.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation," 42 U.S.C. § 12182(a), which includes "all postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(J). Discrimination on the basis of disability includes the failure to provide reasonable modifications "when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). See Bercovitch v. Baldwin School, 133 F.3d 141, 153 (1st Cir. 1998). ADHD can constitute a disability under the ADA. Bercovitch, 133 F.3d at 155.

Title III of the ADA states, "no individual shall be discriminated

against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. Private schools are public accommodations under Title III of the ADA. 42 U.S.C. § 12181(7)(J).

The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a).

Individual actors can be liable for retaliation under § 504 of the Rehabilitation Act, 29 U.S.C.S. § 794. Title 34 C.F.R. § 100.7 provides that no recipient "or other person" may engage in retaliatory activity.

The elements of a cause of action for retaliation under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the

adverse action.  These are the identical elements for liability under the anti-retaliation provision of § 504 of the Rehabilitation Act, 29 U.S.C.S. § 794.

In addition to claiming that Regent Universities termination violated the anti-discrimination prohibitions of § 504 and relevant regulations, plaintiff claims that defendants violated the anti-retaliation regulations under § 504.  Plaintiff invokes 34 C.F.R. § 100.7, which provides, No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.  34 C.F.R. § 100.7.

Plaintiff further argues, the experience resulted in mental pain and anguish and embarrassment as a result of the Universities intentions.

## V. RESPONSE TO DEFENDANT'S ASSERTION OF DEFAMATION CLAIM

First, the plaintiff argues that other than the defendants' to opine that the plaintiff's civil litigation suits filed at the state and

federal level are suggestive of 'known criminal' conduct as it relates to his claim for defamation is false. It has in this case failed to demonstrate or point out any substantive issues as it relates to the claim of defamation. Moreover, the assertions made by the defendants' that the plaintiff is no stranger to pro se litigation and has been involved in multiple claims is highly suggestive of an attempt to discredit the plaintiff based on 'ad hominem.' This means the defendants seek to attack and discredit the plaintiff's character, but never the issues.

The following United States Supreme Court cases give some guidance. In *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323 (1974), the Supreme Court observed that: The first remedy of any victim of defamation is self-help, using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation. Public officials usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater.

To sustain a punitive damage award, plaintiff, as a private person, is required to establish malice by clear and convincing proof. *Newspaper Publishing Corp.* v. *Burke*, 216 Va. 800, 804, 224 S.E.2d 132, 136 (1976). To decide if that requirement has been met, we conduct an "independent examination of the whole record," *The Gazette*, 229 Va. at 19, 325 S.E.2d at 727, resolving disputed factual issues and inferences favorably to the plaintiff. Richmond Newspapers, Inc. v. Lipscomb, 234 Va. 277

Common law malice, involves "motives of personal spite, or ill-will." *The Gazette v. Harris*, 229 Va. 1, 18, 325 S.E.2d 713, 727, *cert. denied sub nom. Fleming v. Moore*, 472 U.S. 1032 (1985); *Story v. Newspapers, Inc.*, 202 Va. 588, 590, 118 S.E.2d 668, 670 (1961).

Plaintiff argues the following cases in support that each of these cases evidences conduct demonstrating a reckless disregard for truth. *See Butts*, 388 U.S. at 157; *Carson v. Allied News Co.*, 529 F.2d 206, 211 (7th Cir. 1976); *Goldwater*, 414 F.2d at 339; *Burns*, 659 P.2d at 1362 (Colo. 1983); *Mahnke v. Northwest Publications*, 280 Minn. 328, 340, 160 N.W.2d 1, 12 (1968).

The facts in all those cases give rise to an inference of recklessness in failing to check other sources, apart from deadline pressures.

Plaintiff maintains that defendants' reckless disregard for the truth is demonstrated by a consideration of the following factors:

Plaintiff states that the ill will defendants sources bore plaintiff was of such a character as to raise obvious doubts as to their veracity.

The Supreme Court in *St. Amant* v. *Thompson*, 390 U.S. 727 (1968), suggested that "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* at 732.

In each of these cases cited by the plaintiff, the reporter either had personal doubts about the informant or had been told that the informant was unreliable. *Pep v. Newsweek, Inc., 553 F.Supp. 1000, 1002 (S.D.N.Y. 1983); Alioto v. Cowles Communications, Inc., 430 F.Supp. 1363, 1370-71 (N.D.Cal. 1977), aff'd, 623 F.2d 616 (9th Cir. 1980), cert. denied, 449 U.S. 1102 (1981); Burns v. McGraw-Hill Broadcasting Company, Inc., 659 P.2d 1351, 1361-62 (Colo. 1983); Stevens v. Sun Publishing Co., 270 S.C. 65, 71, 240 S.E.2d 812, 815, cert. denied, 436 U.S. 945 (1978).*

Plaintiff argues, his charges display no jail time served and intends to respond to each of the defendant's assertions that these charges reveal that the plaintiff is a 'known criminal.'

Plaintiff argues, his reckless driving charge is nearly 7 years old and falls under a traffic infraction. For the court to consider because the plaintiff was convicted for speeding 20 miles or over the speed limit to suggest he is a 'known criminal' is tenuous at best. Given the length of time that has past and the gravity of the harm leaves no doubt that a traffic infraction will lead a reasonable person to believe that the plaintiff is a 'known criminal.'

Plaintiff further argues the only charge that demonstrates a crime was committed was in fact a misdemeanor hit and run charge which occurred nearly seven years ago. Clearly nothing in the record indicates the plaintiff became a notorious 'known criminal' in the City of Virginia Beach from this incident or has the defendants suggested anything from the record which indicates that it does.

The other three charges that the defendants' dispute will demonstrate that they have not reviewed these charges carefully enough. Plaintiff has attached hereto, marked exhibit A and will reveal these matters are still on review with the appellate court and

that any objective review of these cases will show that the court has been inclined to review these matters in an expeditious fashion and will convey no reason to associate the plaintiff as a 'known criminal.'

The defendants were without receipt of the plaintiff's true identity when they stated he was a 'known criminal' according to the defendants' motion to dismiss. Moreover, these statements were received from a third party which suggests that the information was nothing more than 'gossip' about someone they knew very little about if anything about.

In order to establish prima facie evidence of publication, a plaintiff is not required to present testimony from a third party regarding what that person heard and understood, or to identify the person to whom the defamatory words were published. Instead, a plaintiff may prove publication of defamatory remarks by either direct or circumstantial evidence that the remarks were heard by a third party who understood these remarks as referring to the plaintiff in a defamatory sense.

Subsequent to the plaintiff leaving the library the facts clearly indicate the officers had struggled to acquire correct information

about the plaintiff's criminal record.  Yet, other than to opine,

threaten, coerce, and injure the plaintiff's reputation they continued to

bully the plaintiff.  Certainly, they had no prior personal knowledge or

contact with the plaintiff and the plaintiff never had any

communication with them.

Officer Jenkins while in the campus library began stating to

library staff that he was 'getting rid of a problem which appears to be

some type of criminal known in Virginia Beach.'  Officer Moreno's

statement that plaintiff was a known criminal in Virginia Beach was

shared with much of the community members, staff and inner

members of the campus police in hopes to destroy the credibility and

reputation of the Plaintiff.  This information was disseminated through

widespread publication of the allegedly defamatory remarks which all

occurred on the date of the alleged incident of **December 01, 2009**.

These and among other defamatory statements were made on

the day of the incident against the plaintiff.  (See amended complaint

¶¶ 13-20)

Defendants clearly have slanted their argument against the

plaintiff given the fact that none of the cases they cite display or

reveal any meritorious cases which the plaintiff has had.  In a recent

decision on review in the Virginia Supreme Court the plaintiff was meritorious in a matter which he represented himself pro se, Shapiro v. Younkin Record No. 082607 which will indicate a published 14 page opinion where the court reversed the decision of the Virginia Beach trial court and in favor of the plaintiff.  The plaintiff without reason to be immodest has had many other cases which the plaintiff has been meritorious in though to illustrate the point that the defendants sole intention here is to destroy any credibility that the plaintiff has as well as his character.

The majority relies upon *Great Coastal Express v. Ellington, 230 Va. 142, 334 S.E.2d 846 (1985)*, as authority for the proposition that a finding of negligence is subsumed in a finding of reckless disregard for the truth.

Plaintiff points out that because he *successfully proves* the higher standard, he has proved negligence.  When the plaintiff proves reckless disregard for the truth, he also proves negligence.

Virginia recognizes two general varieties of defamation.  Words which are defamatory per se are those words which (1) impute the commission of a criminal offense involving moral turpitude; (2) impute infection of a contagious disease, (3) impute unfitness to perform the

offices or duties of employment or lack of integrity in the discharge of those duties; or (4) prejudice a person in his or her profession or trade.  Words or statements which are not per se defamatory may nonetheless be actionable based on the context in which they were uttered.

Plaintiff alleges that the false statements are in violation of Virginia common law and statutes and that they were made "willfully, wantonly, and in utter disregard for plaintiff's rights."  The Amended complaint contains sufficient allegations of common law malice to withstand a claim of qualified privilege at this stage of the proceedings.

## VI. RESPONSE TO DEFENDANT'S ASSERTION OF DEPRIVATION OF CIVIL RIGHTS CLAIM, 42 U.S.C. § 1983

The plaintiff contends that the defendants argument that because Regent University is a 'private school' and run by 'private actors' that their conduct cannot be held liable under any § 1983 claim is contrary to how various circuits, including the United States Court of Appeals for the Second, Fourth, and Seventh Circuits, have applied *42 U.S.C.S. § 1983* concerning municipalities to private institutions such as a university where such private institutions and its

officials have been held liable.  Maniaci v. Georgetown Univ., 510 F.
Supp. 2d 50

At the pleading stage in a *42 U.S.C.S. § 1983* case, only an
allegation of the existence of a policy, practice, or custom and its
causal link to the constitutional deprivation suffered is required.  An
actor who is responsible for the general direction and supervision of
the administration, promulgates rules to run his or her department,
and exercises vast responsibilities and expansive authority is a final
policy-maker.

Clearly, President M.G. Robertson, the Broad of trustees, and
its Registered Agent act in this capacity.

Plaintiff may bring § 1983 claims against him for violations of
their right against retaliation under the ADA.  Section 1983 is
"presumptively available remedy for claimed violations of federal law."
Livadas v. Bradshaw, 512 U.S. 107, 133, 129 L. Ed. 2d 93, 114 S. Ct.
2068 (1994). Plaintiff's complaint asserting a claim based upon
alleged violations of 42 U.S.C. § 1983 is the plaintiff was not afforded
due process of law when he was accused of violating the School's
Code.  A community member or student facing suspension from
school for disciplinary reasons is entitled to "oral or written notice of

the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) (quoting *Goss v. Lopez*, 419 U.S. 565, 581, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975)).

Plaintiff's complaint indicates that he was never afforded notice of the charges against him, or received copies of all the evidence considered, and instead the school took advantage of the opportunity to present his side of the story. Plaintiff was removed for the primary reason that he was disabled based on the facts contained in the plaintiff's amended complaint.

Next, plaintiff seeks to address the issues of the officers' conduct in performing an illegal search of the plaintiff's vehicle for his identification and for handcuffing the plaintiff while their investigation proceeded. In examining each constituent part of the officers' conduct, plaintiff asserts we do not lose sight of the possible inference from the evidence that Campus Police were motivated by the officers' anger at plaintiff's "irreverent" refusal to consent to their search and the plaintiff's mental and physical disability.

24

In short, crediting plaintiff's version of disputed factual issues, as we must, it appears that this may not be a case in which police officers acting in good faith made a "bad guess" in a confusing area of the law, but instead, may be a case in which police officers, angered by the plaintiff's statement of his legal rights and refusal to permit a search which was clearly illegal absent his consent, conducted an illegal search in a fit of pique. The officers now seek to justify their conduct with an implausible to approach the plaintiff to speak to without a warrant, assertions that verbal objection to an illegal search is an independently arrestable offense. The police do not have a right to seize a citizens wallet and identification for refusing to consent to an illegal search. In this case, viewing the facts surrounding the false imprisonment claim in the light most favorable to the plaintiff, the plaintiff was unquestionably "seized," as he was confined in the library and parking lot for several hours while his vehicle was being searched and harassed regarding his criminal background. Notwithstanding the reasonableness of the plaintiff's detention during the search, however, there remains an issue of whether the manner of their detention -- specifically, the handcuffing -- was unreasonable. *See* Muehler v. *Mena*, 544 U.S. 93 at 99

(explaining that applying handcuffs constitutes "separate intrusion"). In order for a handcuffing such as this to be reasonable, "the governmental interests" being invoked must have "outweigh[ed] the marginal intrusion" on the plaintiff. *Id.* at 99-100. Campus Police's failure to provide *Miranda* warnings and the attempted elicitation from the plaintiff of an involuntary confession and the gravamen of plaintiff's complaint is the contention that the detention, interrogation, and subsequent investigation of them by Campus Police was discriminatorily motivated and not based upon probable cause. These allegations constitute a cause of action under 42 U.S.C. § 1983. The plaintiff's allegation along this line is that during their detention by Campus Police he was "denied access to counsel." The detention and search was unlawful and unreasonable. Put simply, the Campus Polices' decision to initially handcuff the plaintiff upon entry into the plaintiff's vehicle was unreasonable. Although they were searching for identification only -- and not for either weapons or persons -- a reasonable officer would not have had legitimate safety concerns under these circumstances. The officers were clearly not executing an issued search warrant either.

A plaintiff's allegation that he was deprived of freedom from

arrest except upon probable cause constitutes an allegation of a

Fourth Amendment violation.  Maniaci v. Georgetown Univ., 510 F.

Supp. 2d 50

An arrest is the seizing of a person and detaining him in the

custody of the law.  The term arrest may be applied to any case

where a person is taken into custody or restrained of his full liberty, or

where the detention of a person in custody is continued for even a

short period of time.  The United States Supreme Court has held that

a restriction of liberty of movement can constitute an arrest.  In order

for there to be an arrest it is not necessary that there be an

application of actual force, or manual touching of the body, or

physical restraint which may be visible to the eye, or a formal

declaration of arrest.  Maniaci v. Georgetown Univ., 510 F. Supp. 2d

50

A prima facie case under 42 U.S.C.S. § 1983 requires a plaintiff

to demonstrate: (1) a person deprived him of a federal right; and (2)

the person who deprived him of that right acted under color of state

law.  In addition, a plaintiff who claims a violation of § 1983 by the use

of excessive force must show that the officers' use of force to

effectuate an arrest was unreasonable.  If the § 1983 claim is based

on failure to provide necessary medical treatment, the plaintiff must show both that his medical needs were serious and that the defendants' failure to attend to his medical needs rose to the level of deliberate indifference.

An officer is deliberately indifferent to the medical needs of a person in custody when there is a strong likelihood, rather than a mere possibility, that harm will occur to the person and the officer knew or should have known of that strong likelihood.  A strong likelihood is one which is so obvious that a lay person would easily recognize the necessity for preventive action.

To demonstrate a prima facie case under 42 U.S.C.S. § 1983 against an employer of a person who deprived the plaintiff of his federal right, the plaintiff must prove the existence of a policy or custom of the employer that caused the violation of his federal right. Where the custom or policy in question is the failure to train or the negligent supervision of employees, a cause of action against the employer will lie only where the plaintiff shows deliberate indifference to his federal rights.  Hargrove v. City of Philadelphia, 1995 U.S. Dist. LEXIS 14367

The defendants in the course of their official duties were aware

of the presence of the plaintiff on the date of the incident and the
extent of his physical and mental disability.

Officer Moreno made various 'threats' and statements directed
at the plaintiff which eventually led the Officer to put his handcuffs on
the plaintiff and restrain him onto the ground with his body lunged
over the plaintiff.  Each officer took their chance and shot to 'threaten'
and 'harass' the plaintiff.  After having to stand for 30 minutes plaintiff
got tired and began experiencing back pain, muscle aches, muscle
tremors and other symptoms related to his physical disability.  Officer
Moreno continued to 'harass' and 'threaten' the plaintiff with
comments regarding the plaintiff as, 'a known criminal in Virginia
Beach and knows the type of person [he] is…,'  'I have heard about
your arrest history and stories about what has gone with you…'
Officer Moreno further stated, 'Mr. Shapiro, you are a shit bag.'
Officer Moreno continued accosting the plaintiff in a hostile manner
demanding for 'his hands to remain on plaintiff's vehicle' and that
Plaintiff could 'have weapons on him and cannot put his hands in his
pockets.'  Campus Police stated, 'What are you a deaf, fuck?'  Don't
you listen!'

Notwithstanding that a pat down had already commenced, that did not stop the officers from 'harassing' and 'threatening' the plaintiff that his hands could not be in his pockets or his hands needed to remain on the vehicle.  Officer Moreno then placed his handcuffs on the plaintiff while plaintiff's pain exacerbated.  Plaintiff continued to complain of extreme muscle discomfort and joint pain.  (chuckles were made at the plaintiff and the officers continued to mock at the plaintiff while they each took their turn with comments of innuendo)

Officer Moreno continued by interrogating the plaintiff with questions.  'Does your disability relate to any reason why you can not listen.'  'Do you like to play games?'  'You like when we treat you like a little kid, don't you.'  'Do you have any anger issues?' or 'are you just stupid.'  'Why do you come to Regent University?'  'How often do you come to Regent University?'  'People here feel that your trying to pry information from them.'  'We don't want you here.'  Officer Moreno was upset that Plaintiff would not have his hands against the vehicle the whole time and decided to restrain the plaintiff in handcuffs.

In addition, plaintiff's vehicle displayed a handicap placard located on his rear view mirror.  The staff members who were came along with the Campus police began to question plaintiff's disability

and why plaintiff had a posted disability placard on his vehicle.

Officer Jenkins, began asking the same questions to the plaintiff as officer Moreno did which included, 'Does disability relate to any reason why you can not listen.' 'Do you like to play games?' 'Do you have any anger issues?' or 'are you just an idiot.' 'Why do you come to Regent University?' 'How often do you come to Regent University?' 'People here feel that your trying to pry information from them.' Officer Jenkins then ran plaintiff's information regarding his handicap placard. 'Do you take any medication for your disability?' 'I think your mental illness has something to do with why you're being asked to leave.' 'Do you take aterol, lexipro...?' 'What type of meds do you take?' 'I bet you take all those meds,' 'You don't have to answer that question.'

Campus police then ran the information provided on plaintiff's disability placard to determine the validity of disability and ownership of his disability placard. (amended complaint ¶¶ 6-12)

To invoke the theory of liability of negligent hiring or supervision, it is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with

that actual or constructive knowledge, failed to adequately supervise the employee.  A plaintiff can sufficiently allege that supervisors possessed the requisite state of awareness by showing active collusion with the tortfeasors over whom they exercised control or even by showing that they witnessed the tortious action and did not intervene.  Maniaci v. Georgetown Univ., 510 F. Supp. 2d 50

The safety of the officers and the efficacy of the search are matters of first concern, but so too is it a matter of first concern that excessive force is not used on the persons detained, especially when these persons, though lawfully detained under Michigan v. Summers, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), are not themselves suspected of any involvement in criminal activity.  The use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances, Graham v. Connor, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).

The reasonableness calculation under *Graham* is in part a function of the expected and actual duration of the search.  If the search extends to the point when the handcuffs can cause real pain or serious discomfort, provision must be made to alter the conditions of detention at least long enough to attend to the needs of the

detainee.  This is so even if there is no question that the initial handcuffing was objectively reasonable.  The restraint should also be removed if, at any point during the search, it would be readily apparent to any objectively reasonable officer that removing the handcuffs would not compromise the officers' safety or risk interference or substantial delay in the execution of the search.

## VII.  RESPONSE TO DEFENDANT'S ASSERTION OF FALSE IMPRISONMENT CLAIM

In Virginia, a false imprisonment is '"the direct restraint by one person of the physical liberty of another without adequate legal justification.'"  *Figg v. Schroeder, 312 F.3d 625, 637 (4th Cir. 2002)* (quoting *Jordan v. Shands, 255 Va. 492, 500 S.E.2d 215, 218 (Va. 1998))*.  In examining each constituent part of the officers' conduct, plaintiff asserts we do not lose sight of the possible inference from the evidence that Campus Police were motivated by the officers' anger at plaintiff's "irreverent" refusal to consent to their search and the plaintiff's mental and physical disability.

In short, crediting plaintiff's version of disputed factual issues, as we must, it appears that this may not be a case in which police officers acting in good faith made a "bad guess" in a confusing area

of the law, but instead, may be a case in which police officers, angered by a students statement of his legal rights and refusal to permit a search which was clearly illegal absent his consent, conducted an illegal search in a fit of pique.  The officers now seek to justify their conduct with an implausible to approach the plaintiff to speak to without a warrant, assertions that verbal objection to an illegal search is an independently arrestable offense.  The police do not have a right to seize a citizens wallet and identification for refusing to consent to an illegal search.  In this case, viewing the facts surrounding the false imprisonment claim in the light most favorable to the plaintiff, the plaintiff was unquestionably "seized," as he was confined in the library and parking lot for several hours while his vehicle was being searched and harassed regarding his criminal background.

Clearly there was never any actual knowledge other than 'gossip' received from an unreliable third party which not substantiate the plaintiff is a 'known criminal' or does his criminal history prove anything other than near impeccable with exception of a misdemeanor hit and run charge which occurred over 4 years ago with no jail time for its occurrence.  Other than the criminal court of

Virginia Beach seeking to collect fines imposed for these offenses

does any of this suggest the plaintiff is a 'known criminal.'

Plaintiff during the false imprisonment stated he was in pain

both emotionally and physically which clearly evidences his desire not

to want to continue in the manner which the campus police had been

handling him. In fact, the plaintiff begged to see if he could leave

though the campus police refused to allow him to go anywhere.

Plaintiff was complaining and asking the campus why they had

approached him? Plaintiff saw no reason why he needed to

cooperate with the campus police. After the plaintiff was attacked by

Officer Moreno and placed in handcuffs the plaintiff became sacred

and feared for his life. Moreover, before the plaintiff was forced to go

outside he was busy doing research and to have to get his ID while

his property was left unattended in the library made him feel very

uncomfortable. No reasonable person would agree to stay confined

for several hours while campus police harass and commit bodily harm

to him.

A plaintiff's allegation that he was deprived of freedom from

arrest except upon probable cause constitutes an allegation of a

Fourth Amendment violation.  Maniaci v. Georgetown Univ., 510 F.
Supp. 2d 50

Defendants concede that the plaintiff was on private property
and a non student which condones their conduct to suggest the
plaintiff was trespassing.  The plaintiff argues this is legally
unsupportable based on:

Title III of the ADA states, "no individual shall be discriminated
against on the basis of disability in the full and equal enjoyment of the
goods, services, facilities, privileges, advantages, or accommodations
of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation."
42 U.S.C. § 12182.  Private schools are public accommodations
under Title III of the ADA. 42 U.S.C. § 12181(7)(J).

Due to Regent University being a school of public
accommodation many individuals routinely use the campus for these
purposes including non disabled individuals.

## VIII. CONCLUSION

A rehash of the allegations that I have already summarized is
unnecessary to demonstrate that the plaintiff contains sufficient
specificity on the foregoing elements to survive on this complaint.

Citizens of all types rely on the Courts and the Constitution as guarantors of equal rights. The equal rights is part of the foundation of our governance and it cannot be deprived from its citizens.

The defendants have further compromised the integrity of our system at a point when as a matter of law would solidify a citizens absolute right. If this conduct continues citizens across the country that participate within the United States Court will have much to fear, and even more to lose. Citizens have struggled to achieve the equal protection of the laws and rely on the principle that equal protection is not a privilege to be selectively revoked at will. It is a right that is fundamental to our social order and that it must be preserved.

Throughout these struggles citizens have reviewed the rules, laws, guidelines, and policies of the courts with the expectation that the process ensures public trust and confidence which shall not be compromised.

Lastly, plaintiff seeks for the court to schedule an initial pretrial conference to be conducted in accordance with <u>Fed. R. Civ. P. 16(b)</u>, to allow the discovery and any other pretrial motions to be considered.

DATED this 29th day of April, 2010.

Respectfully Submitted

JOSHUA B. SHAPIRO

By_____

Plaintiff

## CERTIFICATE OF SERVICE

I do hereby certify that on April 29, 2010, I served a true copy of the plaintiff's response to memorandum in support of defendants' motion to dismiss was mailed to: Counsel for Defendants: William D. Bayliss, Esq., Brendan D. O'Toole, Esq., Williams Mullen, Two James Center, 1021 East Cary Street, P.O. Box 1320, Richmond, Virginia 23218-1320.

_____

Pro Se